**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **MARY GOODSON, JESSIE PADILLA and SYLVIA INIGUEZ, Individually and on Behalf of All Others Similarly Situated,** ) ) ) ) ) | |
| | **Case No. 15-cv-09587** |
| **Plaintiffs,** ) ) | **Judge Dow** |
| | **Magistrate Judge Valdez** |
| **v.** ) ) | |
| **UNITED MAINTENANCE COMPANY, INC.,** ) ) ) | |
| **Defendant.** | |

**CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE**

This Class Action Settlement Agreement ("Settlement Agreement" or "Agreement") is made and entered into by Mary Goodson, Jessie Padilla and Silvia Iniguez and their respective heirs, executors, administrators, successors, and assigns (collectively referred to throughout this Agreement as "Named Plaintiffs") and the Settlement Class (as defined below in Paragraph 6) on the one hand, and United Maintenance Company, Inc. (referred to throughout this Agreement as "Defendant") on the other hand, to voluntarily and completely settle and resolve the individual and class claims as specified below.

**BACKGROUND AND RECITALS**

1.     Named Plaintiffs filed a Complaint on October 27, 2015 against Defendant, in *Goodson et al. v. United Maintenance Company, Inc.*, No. 15-cv-09587, alleging that De-

fendant violated the Fair Labor Standards Act (FLSA) and the Illinois Minimum Wage Law (IMWL) statutes by improperly and detrimentally rounding the electronic time clock entries of janitors working at O'Hare International Airport during the three years prior to the Complaint (hereinafter referred to as the "Lawsuit" or "*Goodson* Action.")

2.      As of the date of this Settlement Agreement, Plaintiffs have not moved for certification of a class under Fed. R. Civ. P. Rule 23 and have not moved for conditional certification of an FLSA collective action under 29 U.S.C. § 216(b).

3.      On March 22, 2016, the Parties participated in a mediation before Mediator Douglas Werman, a highly regarded mediator and litigator specializing in wage and hour cases. Subsequent to the mediation, the parties continued to negotiate through Mr. Werman and independently, ultimately reaching an agreement in principle on June 9, 2016. At all times, the negotiations leading to this Settlement Agreement have been adversarial, non-collusive, and at arm's length.

4.      Named Plaintiffs, on their own behalf and other similarly situated individuals, and their counsel have conducted an investigation and evaluation of the facts and law relating to the claims asserted in the Lawsuit to determine how best to serve the interests of the Settlement Class Members and believe, in view of the costs, risks, and delay of continued litigation balanced against the benefits of settlement to Named Plaintiffs and Settlement Class Members, that the settlement as provided in this Agreement is in the best interests of the Named Plaintiffs and the Settlement Class Members and that the settlement pro-

CHICAGO/#2866623.3

vided in this Agreement represents a fair, reasonable, and adequate resolution of the Lawsuit.

5.  Defendant denied and continues to deny the claims and allegations raised in the Lawsuit and has denied and continues to deny any and all wrongdoing, liability and damages of any kind to any individual or group of individuals, including but not limited to Named Plaintiffs and members of the Settlement Class (as defined in Paragraph 6), arising out of or with respect to the alleged facts, theories, claims, and/or causes of action asserted in the Lawsuit including but not limited to those relating to unpaid overtime. Nonetheless, without admitting or conceding any wrongdoing, liability or damages whatsoever, Defendant has agreed to settle the Lawsuit on the terms and conditions set forth in this Agreement solely to avoid the burden, expense and uncertainty of continuing the Lawsuit.

6.  For purposes of this Settlement Agreement, "Settlement Class Members" shall be defined as follows:

> All individuals who are currently employed or were employed by the Defendant at O'Hare International Airport as janitors, window washers or other similarly titled positions at any time during the period from October 27, 2012 through July 11, 2016 and who are identified on the Class Settlement List attached hereto as Exhibit A to the Settlement Agreement.

The "Settlement Class" consists of all Settlement Class Members who fail to opt out of the Settlement Agreement. "Settlement Participants" shall refer to those Settlement Class Mem-

bers who do not properly opt out of the Settlement Class. The period October 27, 2012 through July 11, 2016 shall also be referred to herein as the "Class Period."

7. Only for purposes of settling this case, the Parties conditionally stipulate and agree that the requirements for establishing class certification with respect to the Settlement Class Members have been met and are met, and therefore, stipulate to class certification. More specifically, the Parties conditionally stipulate and agree that:

a. The number of Settlement Class Members is so numerous as to make it impracticable to join all Settlement Class Members.

b. There are common questions of law and fact including, but not necessarily limited to, whether Defendant failed to pay wages and overtime as required by Illinois law and the FLSA.

c. Named Plaintiffs' claims are typical of the claims of the Settlement Class Members.

d. Jeffrey Grant Brown of Jeffrey Grant Brown, P.C. and Glen J. Dunn, Jr. of Glen J. Dunn & Associates, Ltd. should be deemed "Class Counsel" and will fairly and adequately protect the interests of the Settlement Class Members.

e. The prosecution of separate actions by individual Settlement Class Members would create the risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct.

      f.     Questions of law and fact common to the Settlement Class Members predominate over questions affecting individual Settlement Class Members and a class action is superior to other available means for the fair and efficient adjudication of the controversy.

      g.     For settlement purposes only, the Parties agree that the *Goodson* Action also may be maintained as an FLSA collective action pursuant to 29 U.S.C. § 216(b).

8.     Defendant deny any liability or wrongdoing of any kind associated with the claims that are or were alleged in the complaint filed in the Lawsuit, and, for any purpose other than settling this Action, further deny that this action is appropriate for class treatment. Defendant contend, among other things, that it has complied at all times with all applicable Illinois and federal laws governing the payment of wages.

9.     Plaintiffs believe they have filed a meritorious action. Plaintiffs contend that Defendant violated Illinois and federal wage and hour laws and that this case is appropriate for class certification as the requirements for class certification can be satisfied in this case.

10.     Pursuant to the terms of this Settlement Agreement, it is the desire of the Parties to fully, finally, and forever settle, compromise, and discharge all disputes and claims which exist between them arising from this Action. In order to achieve a full and complete release of Defendant of such disputes and claims, each Settlement Participant (which includes any legal heirs and/or successors-in-interest of each Settlement Partici-

CHICAGO/#2866623.3

pant), through execution of the Settlement Agreement by their counsel, acknowledges that this Settlement Agreement is intended to include in its effect all claims arising from the allegations in the Lawsuit.

11.    As detailed in Paragraph 16, it is the intention of the Parties that this Settlement Agreement shall constitute a full and complete settlement and release of all unpaid compensation claims arising from the factual allegations in this Action, including, without limitation, claims in the nature of claims for unpaid wages, unpaid premium pay, unpaid overtime pay, unpaid pre-shift time or post-shift time worked, wage and hour violations, wage payment violations, recordkeeping violations and including but not limited to claims under the IMWL, FLSA, and the Illinois Wage Payment and Collection Action, as well as claims for attorneys' fees and costs based on the foregoing claims.  For purposes of this Settlement Agreement, "Releasees" shall mean United Maintenance Company, Inc. and United Service Companies, Inc. and their current and former parents, subsidiaries, affiliates, divisions, shareholders, officers, partners, owners, directors, members, servants, employees, agents, attorneys, insurers, shareholders, representatives, accountants, and all persons acting under, by, through, or in concert with any of them.

## TERMS OF SETTLEMENT

12.    <u>Effective Date</u>:  The settlement embodied in this Settlement Agreement is conditioned on the occurrence of each of the following events:  (i) counsel for the Plaintiffs and a representative of Defendant executing this Settlement Agreement; (ii) this Court granting preliminary approval to the Settlement Agreement; (iii) notice being given to the

6

Settlement Class Members, providing them with an opportunity to opt out of the Settlement; and (iv) this Court holding a final fairness hearing and entering a final order and judgment approving this Settlement Agreement and dismissing this case with prejudice. Assuming each of these events has occurred, the effective date of the Settlement ("Effective Date") shall be the later of either (1) the expiration of the time for filing an appeal from the Court's entry of a final judgment order (30 calendar days from Entry of Judgment); or (2) if a timely appeal is made, the date of the final resolution of that appeal and any subsequent appeals resulting in final judicial approval of the Settlement Agreement. If there is a failure to reach the Effective Date: (1) the Settlement Agreement shall have no force and effect, and no Party shall be bound by any of its terms; (2) Defendant shall have no obligation to make any payments to the Settlement Participants or Class Counsel; and (3) the Settlement Agreement and all negotiations, statements, proceedings and data relating thereto shall be protected by Federal Rule of Evidence 408 and shall be without prejudice to the rights of any of the Parties, all of whom shall be restored to their respective positions in the this Lawsuit prior to the parties' agreement to stay discovery and proceedings.

13.     <u>Administration of Settlement Payments</u>:

a.     <u>Attorneys' Fees and Costs</u>:     Subject to the Court's approval, Defendant agrees to pay Three-Hundred Twenty-Five Thousand Dollars ($325,000.00) out of the Settlement Fund, defined in Paragraph 14 below, to Class Counsel for attorneys' fees and costs ("Attorneys' Fees Award").  The Attorneys' Fees Award will compensate and reim-

burse Class Counsel for (1) all of the work already performed by Class Counsel in this case; (2) all of the work remaining to be performed by Class Counsel in documenting the settlement, securing Court approval of the settlement, including in the event an appeal is filed, making sure that the settlement is fairly administered and implemented and obtaining dismissal of this Action; and (3) for all costs actually incurred and reasonably anticipated to be incurred by Class Counsel in litigating and finalizing this Action. The payment to Settlement Participants as described in this Agreement is not contingent upon Class Counsel's receipt of the entire payment described in this paragraph, and the Court's disapproval of any portion of the payment to Class Counsel shall not be grounds for voiding other provisions therein. Defendant agrees to not object to or contest any application to the Court by Class Counsel for payment of the Attorneys' Fees Award up to and including the amount stated above. Whatever amount is determined by the Court, it shall not increase the liability of Defendant; Defendant's total liability under this Agreement is limited to that amount deposited into the Settlement Fund defined in Paragraph 14 below. Class Counsels' fees and costs awarded by the Court shall be paid from the Settlement Fund.

b. <u>Enhancement Awards</u>: Defendant will pay $2,500.00 each to Named Plaintiffs Mary Goodson and Silvia Iniguez for their service in this Action; and $4,000.00 to Named Plaintiff Jesse Padilla. Should the Court approve enhancement awards of less than the amounts set forth above, the unapproved portion shall be distributed proportionately to the Settlement Participants. In exchange for these Enhancement Awards Named Plaintiffs will agree to a general release of claims as detailed in Paragraph 17. below.

8

c.      Costs of Settlement Administrator:  The parties have selected Dahl Administration, LLC as the Settlement Administrator in this Action. The Settlement Administrator will quote a fee for claims administration charges, which Defendant will pay out of the Settlement Fund, defined in Paragraph 14 below.  The Settlement Administrator's duties shall include performing a national change of address update on Settlement Class Members' address data as provided to it by Defendant pursuant to Paragraph 13(e) below; mailing the Notice Packets (with all documents in the Notice Packet, including the Notice, being printed in English and Spanish); performing necessary skip traces on Notice Packets returned as undeliverable; providing translation services for Spanish speakers; processing payments; receiving written notices of mailing requests to cure deficiencies in mailings; providing Class Counsel and Defendant's counsel with the reports set forth in Paragraph 14(d), (f) and (h) of this Settlement Agreement, preparing and mailing of all Settlement Participants' settlement checks and calculating Defendant's tax obligations in connection with the settlement payments.

d.      Costs of Mediation:  Defendant will be refunded the amount of $5,000.00 as and for one half of the costs of Mediator Douglas Werman's services ("Mediation Costs") out of the Settlement Fund, defined in Paragraph 14 below.

e.      Notice to the Settlement Class:  Following the preliminary approval of the Settlement by the Court, Defendant will have three (3) calendar days to provide the Settlement Administrator with the data and information necessary to perform the national change of address update, skip traces and mail class notices.  Defendant will furnish the

9

Settlement Administrator with the names, last known home addresses, social security numbers, employee identification numbers and the number of workweeks in which each Settlement Class Member was employed as a Janitor or Window Washer during the period from October 27, 2012 to July 11, 2016 ("Class Data List"). Class Counsel may also furnish the Settlement Administrator with any current addresses of Settlement Class Members that are known to them.

       f.     The addresses provided by Defendant will be run through a NCOA Link database, or a similar product by the Settlement Administrator, and the Notice will be sent to any updated addresses indicated as compared to Defendant's records. After running the addresses through a NCOA Link database, and after Notice has been mailed, if any mail is returned as undeliverable ("RUM"), the Settlement Administrator will perform one basic "skip trace" search for any RUM received without a forwarding address. The basic level search will utilize Accurint (a division of Lexis-Nexis), or a similar product and service, to retrieve the most accurate and updated information.

       g.     Within seven (7) calendar days after the Administrator receives the Class Data List, the Settlement Administrator will send Settlement Class Members, by first-class mail, postage pre-paid, at their NCOA-updated address, the court-approved Notice of Class Action Settlement and Final Approval Hearing Date ("Class Notice") in the form attached hereto as Exhibit "B". A Class Notice shall also be referred to collectively as a "Notice Packet." Any dispute regarding the content of the Class Notice shall be decided by the Court.

CHICAGO/#2866623.3

h.     All mailings by the Settlement Administrator will be by first class mail.

i.     If an original Notice Packet is returned as undeliverable with a forwarding address provided by the United States Postal Service, the Settlement Administrator will promptly resend a Notice Packet to that forwarding address.  If an original Notice Packet is returned as undeliverable and without a forwarding address, the Settlement Administrator will perform a skip trace, and if it obtains a more recent address, will resend a Notice Packet along.  The Settlement Administrator shall also mail a Notice Packet to any Settlement Class Member who contacts the Settlement Administrator and requests a Notice Packet.

j.     A Notice Packet will also be distributed with the paycheck of all Settlement Class Members who are current employees of Defendant, during the first scheduled pay period that occurs during the 30-day notice period.  The Notice Packet shall be accompanied with a memorandum from Defendant regarding the Settlement, and communicating Defendant's continued dedication to ensuring compliance with wage/hour laws. The language of the memorandum shall be subject to Class Counsel's review and approval.

k.     <u>Objections to the Settlement</u>:  The Class Notice also will inform Settlement Class Members of the right to object to the Settlement Agreement.   If a person wishes to have the Court consider an objection to the Settlement Agreement, such person (1) must not have excluded himself from the Settlement, and (2) must mail to the Settlement Administrator or Class Counsel   a written objection stating with particularity the

11

grounds for the objection, along with any supporting documentation that the person wishes the Court to consider, by no later than thirty (30) calendar days from the initial mailing of the Notice Packet. If such an objection is submitted and overruled by the Court, the objecting Settlement Class Member shall remain fully bound by the terms of this Settlement Agreement and the Order of Final Approval entered by the Court.

l.     <u>Exclusion Requests</u>:     The Class Notice will inform Settlement Class Members of the right to opt out of the proposed Settlement Agreement. Any Settlement Class Member who wishes to opt out of the Settlement Agreement must submit a written statement requesting exclusion from the settlement within thirty (30) calendar days from the date that the Notice Packet is initially mailed to the Settlement Class Member. Such written request for exclusion must contain the full name, current home (or mailing) address, telephone number and email address, and it must include the statement "I wish to be excluded from the settlement of the case entitled *Goodson, et al. v. United Maintenance Company, Inc.*, N.D.Ill. Case No. 15-cv-9587", or words to that effect. The written request must be signed by the person requesting exclusion or his or her legal representative, must be post-marked and mailed to the Settlement Administrator at the specified address set forth on the Class Notice or to Class Counsel no later than 30 days from the date of the mailing of the Class Notice. The post-mark date shall be the exclusive means used to determine whether a request for exclusion has been timely submitted. In the event of any dispute concerning whether a Settlement Class Member has timely and properly opted out of the Settlement, counsel for the Parties shall meet and confer in good faith to resolve such dispute. The original requests for exclusion will be retained by the Settlement

12

Administrator and copies will be provided to Class Counsel and Defendant's counsel within three (3) calendar days of receipt by the Settlement Administrator.

14.     <u>Establishment of Settlement Fund.</u> Defendant shall create a pool to fund their settlement obligations in this Action ("Settlement Fund") in accordance with this paragraph. This Settlement Fund is inclusive of all attorneys' fees and costs, all liquidated damages, penalties, all past due or unpaid wages, all penalties of any nature (notice or otherwise), all interest, all settlement administration costs and Enhancement Awards to the Named Plaintiffs, such that Defendant's settlement liability, other than Defendant's share of payroll taxes, shall not exceed $850,000.00  The payments made to Settlement Participants shall not be construed as compensation or credit for purposes of determining eligibility for unemployment compensation or eligibility or accrual of any employee benefits in any plans, programs, agreements or policies offered, sponsored, maintained or contributed to by Defendant, including health and welfare benefits.

        a.     <u>Gross Settlement Value:</u>  The total settlement fund is $850,000.00, which includes all monies paid to plaintiffs, the settlement class, their attorneys and the Settlement Administrator and the amount that is reimbursed to Defendants for the costs of the mediation.  The gross settlement value ("GSV"), which represents the portion of the Settlement Fund that will be allocated to the Plaintiffs and Settlement Class Members, carries a minimum value of $500,000.00.  The GSV excludes the amount of the Enhancement Payments to be paid to the Named Plaintiffs (not to exceed a total value of $9,000.00), Mediation Costs reimbursement  ($5,000.00) and the claims administration

13

costs (not to exceed a total value of $12,000.00) In accordance with paragraph 13(a) above, Class Counsel have agreed that their petition for attorney's fees and costs shall not exceed $325,000.00, but in the event the Court approves an attorney fee award to Class Counsel that is less than $325,000.00, the remainder of the settlement funds allocated for attorney's fees and/or costs shall be added to the GSV.

  b. <u>Calculation of Settlement Class Members' Payments</u>:  In consideration for the settlement and a release of all claims of the Settlement Class against the Defendant, each Settlement Participant, as defined in Paragraph 6 above, shall receive a settlement payment calculated pursuant to this paragraph.  Within five (5) business days after receiving the final report of Settlement Participants as defined in Paragraph 14(d), the Settlement Administrator will provide Class Counsel with an updated Class Data List containing:  (1) the aggregate combined number of work weeks in which any Settlement Participant was employed as a janitor or window washer at O'Hare during the period from October 27, 2012 to July 11, 2016.  There is a rebuttable presumption that Defendant's personnel and payroll records are correct, but Settlement Participants may, should they disagree with Defendant's records, provide documentation and/or an explanation to show contrary employment dates and/or records of time worked no later than 7 days after the close of the 30-day notice period defined in paragraph 13(e)-(k) above.   Such a dispute shall be directed to the Settlement Administrator, who will notify all Counsel of the individual's dispute, provide Counsel with a copy of the records provided by the individual and any other pertinent records, and inform Counsel of the determination of the dispute.

14

If either party objects to the determination of the Settlement Administrator, then the dispute will be finally resolved by the Court.

c.      The GSV settlement fund is created to pay all Settlement Participants who worked for Defendant from October 27, 2012 through July 11, 2016, in whole, or in part, as janitors or window washers at O'Hare airport.  The total value of the settlement fund to be distributed to Settlement Participants will be a minimum of $500,000.00.  The Defendant has represented to Plaintiffs that the approximate aggregate combined total number of work weeks in which Named Plaintiffs and Settlement Class Members were employed during the class period from October 27, 2012 to July 11, 2016 is approximately 73,561.371, with a total of approximately 1,016 putative class members, including the Named Plaintiffs herein; and that approximately 179 class members worked less than 15 weeks during the class period  The total number of individual shares any Settlement Participant has in the Settlement Fund will be equivalent to the total number of work weeks in which any Plaintiff or Settlement Participant was employed as a janitor or window washer at O'Hare during the class period.  The Settlement Administrator will calculate the value of each individual share ("Settlement Fund Share Value") by dividing the total amount in the GSV, which carries a minimum value of $500,000.00, by the total combined number of work weeks worked by all Settlement Participants; and determining how many Settlement Participants will be paid the minimum settlement payment amount. These calculations will be performed once the final Settlement Participant Class list is compiled following the conclusion of the initial thirty (30) day settlement notice period.

CHICAGO/#2866623.3

Each Settlement Participant will receive one share for each work week in which he or she worked as a janitor or window washer at O'Hare during the class period. Each Settlement Participant is entitled to payment for the total value of his or her share(s) ("Settlement Share"), which will be equal to the number of shares he or she receives multiplied by the Settlement Fund Share Value. Regardless of the calculated Settlement Share, each Settlement Participant will receive a minimum settlement payment amount of at least $100.00. If the Settlement Participant's Settlement Share is larger than $100.00, the Settlement Participant will receive the larger amount. Settlement Participants will be entitled to receive the approximate amount detailed in the chart below depending on their length of employment with Defendant as a janitor or window washer. Assuming the Settlement Participant worked for Defendant for 12 months, 24 months, 36 months or 48 months, he or she would be paid within the following approximate range (pre-tax)::

| Tenure of Class Member | Approx. Payment |
| --- | --- |
| 12 months (52 weeks) | $350.00 |
| 24 months (104 weeks) | $700.00 |
| 36 months (156 weeks) | $1,050.00 |

d.      After the Settlement Administrator has calculated each Settlement Participant's Settlement Share, the Settlement Administrator will provide an Excel spreadsheet to counsel that lists the name of the Settlement Participant and the Settlement Participant's Settlement Share. The Settlement Administrator shall be responsible for calculating and withholding all required state and federal taxes on behalf of both Settlement Participants and Defendant, and for mailing each Settlement Participant an award check. On

16

the reverse of each award check will be printed above the space for endorsement a statement that, "by cashing the check, the Settlement Participant fully and finally waives all claims he or she may have under the Fair Labor Standards Act against United Maintenance Company, Inc. and the other Releasees, as defined in the Settlement Agreement, and agrees to opt-in to the collective action certified by the Court under 29 U.S.C. § 216(b)." ("Waiver Warning").

Each settlement check will also bear a legend directing the payer's bank not to accept the settlement check for payment if: (a) the settlement check is unsigned; or (b) the waiver warning, or any part of it, has been altered or deleted.

e.      If any Settlement Participants fail to cash their award checks within one hundred twenty (120) calendar days of distribution, the uncashed checks and their unclaimed funds and property shall be donated to charities designated by Class Counsel and Defendant.  The amount of the uncashed checks shall be divided equally among the charities designated by Class Counsel and Defendant.  By failing timely to cash their checks, the Settlement Participants will be deemed to have waived irrevocably any rights in or claim to their Settlement Award.  The settlement checks will be printed to so advise Settlement Participants.

f.      Funding of Settlement:   Within five (5) business days after the Court grants final approval of the Settlement, Defendant will deposit the actual dollar amount of the shares claimed by Settlement Participants, the Enhancement Award Payments to the Named Plaintiffs, and the Attorneys' Fee Award into the Settlement Fund created by the

17

Settlement Administrator. The maximum amount that Defendant will be required to deposit into the Settlement Fund is $845,000.00. Defendant's payment obligations, including its obligation to pay any attorneys' fees or costs, will be fully satisfied upon depositing this amount into the Settlement Fund.

g.      Payment Procedure:  Within seven (7) calendar days of the Effective Date, the Settlement Administrator (i) will pay all claims to the Settlement Participants, (ii) will pay the Enhancement Awards to the Named Plaintiffs and (iii) will wire payment of all attorneys' fees and costs approved by the Court to Class Counsel at the bank of their choice, with the routing numbers and account numbers to be provided under separate cover and to be held by the Settlement Administrator. Prior to issuing payment to Class Counsel, the Settlement Administrator shall receive from Class Counsel completed Form W-9s and forward the completed forms to Defendant.

h.      Tax Treatment of Each Settlement Share:  The settlement payment to each Settlement Participant will be allocated as follows: 50 percent of the payment will be considered and treated as non-wage penalties and interest, and 50 percent of the payment will be considered and treated as wages and subject to ordinary withholdings. The Enhancement Awards to the Named Plaintiffs shall be treated as wages and subject to ordinary withholdings. The Named Plaintiffs' and Settlement Participants' respective share of payroll deductions for the wage portion of the settlement payments and Enhancement Awards will be calculated by the Settlement Administrator, subtracted from the settlement payments, and paid to the appropriate government agencies. Defendant shall be respon-

18

sible for the payment of the employer-side share of payroll taxes separate and apart from the Settlement Fund Amount it has agreed to pay as described above in Paragraph 14. The Settlement Administrator will calculate the amount owed by Defendant for each Settlement Participant and provide those calculations to Defendant. Within twenty-one (21) calendar days of receipt of the calculations, Defendant shall pay its share of payroll taxes to the Settlement Administrator. The Settlement Administrator will then prepare a Form 1099 and a Form W-2 for each Settlement Participant, reflecting each Settlement Participant's non-wage income and wage income, respectively. The Settlement Administrator will be responsible for preparing these forms correctly. The Settlement Administrator shall also be responsible for submitting Defendant's share of payroll taxes to the appropriate government agencies on behalf of Defendant.

i.     Tax Treatment of Other Payments to Named Plaintiffs and Settlement Participants. Named Plaintiffs' and Settlement Participants' portion of all applicable income and payroll taxes will be the sole responsibility of Named Plaintiffs and Settlement Participants. Defendant makes no representations, and it is understood and agreed that Defendant has made no representations, as to the taxability of any portions of the settlement payments to any Named Plaintiff or Settlement Participant or the payment of any costs or award of attorneys' fees.

## DEFENDANT'S RIGHT TO WITHDRAWAL BASED UPON REQUESTS FOR EXCLUSION

15.     In the event that five percent (5%) or more of Class Members elect to opt out of the Settlement, Defendant shall have the right, in their sole discretion, to void this

Agreement, which will have no further effect upon filing, with the Court, a Notice of Withdrawal From Settlement by Defendant's Counsel. In no event shall Defendant file such a Notice of Withdrawal later than five (5) days after the close of the thirty (30) day Notice period described in Paragraphs 13(e)-(k). If Defendants file such a Notice of Withdrawal, the case will proceed as if no settlement has been attempted. In that event, the parties agree to enter into new good-faith negotiations relative to the terms of any settlement before resuming litigation.

## <u>RELEASE BY THE CLASS</u>

16.     Upon entry of the final judgment and dismissal with prejudice, each Settlement Participant, as defined in Paragraph 6, above, will release, to the extent permitted by law, Defendant and all other Releasees, as defined in Paragraph 11 above, from any and all claims, debts, liabilities, demands, obligations, guarantees, costs, expenses, attorneys' fees, damages, or causes of action asserted in the *Goodson* Action, any and all claims arising from the allegations in Lawsuit and any and all claims asserting a failure to pay any compensation due any Settlement Class Participant during the period of October 27, 2012 through July 11, 2016, including, without limitation, any unpaid wage claims arising under contract, federal, state and/or local law, statute, ordinance, regulation, common law or other source of law, as well as any claims for unpaid wages, unpaid premium pay, unpaid overtime pay, unpaid pre-shift time or post-shift time worked, wage and hour violations, wage payment violations, recordkeeping violations, including claims for unpaid wages and liquidated damages interest and penalties under the IMWL, the FLSA, and the Illinois Wage Payment and Collection Act. Each Settlement Participant shall warrant that

CHICAGO/#2866623.3

any attorney they have consulted in connection with the Action shall release all liens or other claims for attorneys' fees against any Releasees upon payment of the monies described in Paragraph 14.

Settlement Participants who do not cash their Settlement Checks are bound by the terms of the Settlement Agreement, with the exception that they will not release any claims, rights, debts, liabilities, demands, obligations, guarantees, costs, expenses, attorneys' fees, damages, or causes of action under the FLSA.

This release excludes any claim of a Settlement Participant that cannot be released by private agreements, such as, without limitation, benefits, rights, claims or causes of action for unemployment insurance benefits, compensable workers' compensation injuries, personal injury claims, insurance claims, or any other claim not released herein. Except as provided for in Paragraph 17 for the Named Plaintiffs, this release does not apply to any Settlement Participant benefit, right, claim, demand, complaint or cause of action under 29 U.S.C. § 1132(a)(1)(B) or benefits accrued and under any employee benefit plan.

## **RELEASE BY THE NAMED PLAINTIFFS**

17.     In addition to releasing the claims set forth in Paragraph 16 above, the Named Plaintiffs, on their own behalf and on behalf of their successors, assigns, agents, heirs and attorneys, release and forever discharge the Releasees, as described in Paragraph 11, from and for any and all actions, causes of action, suits, controversies, claims and demands whatsoever which they now have, or ever have had, known or unknown, against Releasees arising from any matter whatsoever, at the present time or at any time prior to the Court's final approval of this Agreement, including, without limitation:  (1) any and all

CHICAGO/#2866623.3

claims under the Americans With Disabilities Act, Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, Illinois Human Rights Law, the Employee Retirement Income Security Act of 1974 ("ERISA"), including any and all claims for long-term and/or short-term disability benefits, and any other statute, law, order, ordinance, regulation or enactment of any type, (2) any and all claims under common law including without limitation breach of an express or implied contract or agreement, interference with contract, defamation, slander, assault, battery, harassment, negligence, negligent hiring, negligent retention, retaliation, intentional infliction of emotional distress, intimidation, breach of the duty of fair representation, retaliatory discharge, wrongful discharge in violation of public policy and/or any other tort or common law cause of action, and (3) any and all claims for attorneys' fees or costs (collectively, with Paragraph 16 above, the "Named Plaintiffs' Released Claims"). Nothing in this Agreement is intended to prevent Named Plaintiffs from filing an administrative charge with, providing information to or cooperating with any governmental agency, including the EEOC; provided, however, that Named Plaintiffs waive the right to receive any damages or other personal relief based on any claim, cause of action, demand, charge or lawsuit brought by Named Plaintiffs or on their behalf, or by any third party, including as a member of any class or collective action, against any Releasees.

## **PUBLICITY PROVISION**

18.     The Named Plaintiffs and Class Counsel agree not to issue a press release to news media outlets or participate in press conferences or media interviews regarding the terms of the Settlement.

CHICAGO/#2866623.3

## PRIVACY OF DOCUMENTS AND INFORMATION

19.     The Parties and their counsel agree that they shall not use any of the documents and information Defendant provided to them during the course of this Lawsuit for any purpose of than the prosecution of this Lawsuit.

## DUTIES OF THE PARTIES PRIOR TO COURT APPROVAL

20.     The Parties shall promptly prepare and file with the Court a joint motion for preliminary approval and determination by the Court as to the fairness, adequacy, and reasonableness of this Settlement.   The joint motion for preliminary approval shall request entry of a preliminary order:

a.      Scheduling a fairness hearing on the question of whether the proposed Settlement Agreement, including payment of attorneys' fees and costs and the Named Plaintiffs' enhancement award, should be finally approved as fair, reasonable, and adequate as to the Settlement Class Members;

b.      Certifying a Settlement Class for all claims;

c.      Certifying this Action under Fed. R. Civ. P. 23 as a class action for purposes of settlement;

d.      Certifying this Action under 29 U.S.C. § 216(b) as a collective action for purposes of settlement;

e.      Approving as to form and content the proposed Class Notice;

      f.      Directing the mailing of the Notice Packet by first class mail to the Settlement Class Members;

      g.      Preliminarily approving the Settlement Agreement subject only to the objections of Settlement Class Members and final review by the Court;

      h.      Preliminarily approving the Settlement Administrator and approving payment of the charges of the Settlement Administrator pursuant to the terms of this Settlement Agreement; and

      i.      Approve the settlement as a fair and reasonable resolution of contested claims arising out of a *bona fide* dispute over FLSA and IMWL liability.

## PARTIES' AUTHORITY

21.      The signatories hereto hereby represent that they are fully authorized to enter into this Settlement Agreement and bind the Parties hereto to the terms and conditions hereof. Class Counsel specifically represents and warrants that they are authorized to act on behalf of members of the Settlement Class.

## MUTUAL FULL COOPERATION

22.      The Parties agree to fully cooperate with each other to accomplish the terms of this Settlement Agreement, including but not limited to, execution of such documents and to take such other action as may reasonably be necessary to implement the terms of this Settlement Agreement.  The Parties to this Settlement Agreement shall use their best efforts, including all efforts contemplated by this Settlement Agreement and any other ef-

24

forts that may become necessary by order of the Court, or otherwise, to effectuate this Settlement Agreement and the terms set forth herein. As soon as practicable after execution of this Settlement Agreement, Class Counsel shall, with the assistance and cooperation of Defendant and their counsel, take all necessary steps to secure the Court's final approval of this Settlement Agreement.

## NO PRIOR ASSIGNMENTS

23. The Parties hereto represent, covenant, and warrant that they have not directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action, or rights herein released and discharged except as set forth herein.

## NO ADMISSION

24. Nothing contained herein, nor the consummation of this Settlement Agreement, is to be construed or deemed an admission of liability, culpability, negligence, or wrongdoing on the part of Defendant. Defendant specifically denies any and all liability for the lawsuit. Each of the Parties hereto has entered into this Settlement Agreement with the intention to avoid further disputes and litigation with the attendant inconvenience and expenses.

## CONSTRUCTION

25. The Parties hereto agree that the terms and conditions of this Settlement Agreement are the result of lengthy, intensive arm's-length negotiations between the Parties. The Parties further agree that this Settlement Agreement shall not be construed in favor of

CHICAGO/#2866623.3

or against any Party by reason of the extent to which any Party or its counsel participated in the drafting of this Settlement Agreement.

## CAPTIONS AND INTERPRETATIONS

26.     Paragraph titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Settlement Agreement or any provision hereof.  Each term of this Settlement Agreement is contractual and not merely a recital.

## MODIFICATION

27.     This Settlement Agreement may not be changed, altered, or modified, except in writing and signed by the Parties hereto, and approved by the Court.  This Settlement Agreement may not be discharged except by performance in accordance with its terms or by a writing signed by the Parties hereto.  No rights under this Settlement may be waived except in writing.  However, if the Court refuses to enter orders granting Preliminary or Final Approval of this Agreement, the Parties will meet and attempt in good faith to reach an agreement to resolve the issues identified by the Court as the basis for withholding any such approval.  If the Parties are unable to reach an agreement that is acceptable to the Court, this Agreement shall become void and shall be of no further effect, and Defendant shall not be obligated to pay any monies.

## INTEGRATION CLAUSE

28.     This Settlement Agreement, together with any Exhibits, contains the entire agreement between the Parties with respect to the subject matter of this Agreement, and

all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a Party or such Party's legal counsel, are merged herein. No rights hereunder may be waived except in writing.

## BINDING ON ASSIGNS

29. This Settlement Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, trustees, executors, administrators, successors and permitted assigns.

## PLAINTIFFS' COUNSEL SIGNATORIES

30. Except as otherwise provided in Paragraph 36, it is agreed that because of the large number of Settlement Class Members, it is impossible or impractical to have each Settlement Class Member execute this Settlement Agreement. The Class Notice will advise all Settlement Class Members of the binding nature of the release and such shall have the same force and effect as if this Settlement Agreement were executed by each member of the Class.

## COUNTERPARTS

31. This Settlement Agreement may be executed in counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Settlement Agreement, which shall be binding upon and effective as to all Parties.

32.   <u>Knowing and Voluntary Release</u>.  Each Named Plaintiff agrees that he is signing this Settlement Agreement freely, knowingly, voluntarily and without coercion, and in particular acknowledges that:

a.      He/She has carefully reviewed this Agreement and understand its terms and contents and his rights and obligations hereunder;

b.      He/She has been advised to consult with counsel and has been given the opportunity to consult with counsel before entering into the Settlement Agreement;

c.      He/She has twenty-one (21) days to consider whether to sign and accept this Agreement and seven (7) days to revoke his acceptance by sending written correspondence to Joseph K. Mulherin, Vedder Price P.C., 222 North LaSalle St., Suite 2600, Chicago, Illinois;

d.      He/She is receiving consideration in addition to that to which he already is entitled; and

e.      He/She is not relying on any promises or inducements by Defendant other than those expressly stated herein.

Dated:  July 18, 2016

PLAINTIFFS MARY GOODSON, JESSIE PADILLA AND SYLVIA INIGUEZ FOR THEMSELVES

DEFENDANT UNITED MAINTENANCE COMPANY, INC.

By:

_____

By:

_____

Mary Goodson

N          a          m          e          :

_____

By:

T          i          t          l          e          :

_____

Jessie Padilla

By:

_____

Sylvia Iniguez

FOR SETTLEMENT CLASS MEMBERS

B                    y                    :

_____

Jeffrey Grant Brown
Jeffrey Grant Brown, P.C.
221 N. LaSalle Street, Suite 1414
Chicago, Illinois 60601
(312) 726-3400 (phone)


B                    y                    :

_____

Glen J. Dunn, Jr.
Glen J. Dunn & Associates, Ltd.
221 N. LaSalle Street, Suite 1414
Chicago, Illinois 60601
(312) 546-5056 (phone)

**COUNSEL FOR SETTLEMENT CLASS MEMBERS**

CHICAGO/#2866623.3